NOT DESIGNATED FOR PUBLICATION

No. 118,471

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KENDALL WAYNE GOLSTON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR and BRUCE C. BROWN, judges. Opinion filed March 22, 2019. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Officer, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GARDNER, P.J., HILL and SCHROEDER, JJ.


PER CURIAM: Kendall Wayne Golston pleaded guilty to amended counts of attempted rape and kidnapping. He argues on appeal that the district court erred by summarily denying his motion to withdraw his plea, his request for substitute counsel at sentencing, and his motion to continue sentencing to allow him time to hire private counsel. Finding no error, we affirm.

*Factual and procedural background*

On December 26, 2016, Kendall Wayne Golston entered J.S.J.'s apartment without permission, locked the door behind him, and raped her. She was his ex-girlfriend and the mother of his children. We find it unnecessary for the purposes of this appeal to set forth the details surrounding that violent crime.

During a post-*Miranda* interview, Golston admitted he went into J.S.J.'s apartment and got into in an argument with her. But he denied strangling or making physical contact with J.S.J. and could not explain her injuries. He claimed they had consensual sex. The State charged Golston with rape, aggravated kidnapping, and aggravated battery, and designated all three offenses as domestic violence offenses.

At first appearance, the court advised Golston of the charges against him and ordered him to have no contact with J.S.J., consistent with a protective order filed with the complaint. Golston posted bond that day, again with the condition that he was to have no contact with J.S.J. The State later informed the court that Golston had violated the protective order by sending text and Facebook messages to J.S.J. The State said it intended to move to revoke Golston's bond, and the court modified Golston's bond to impose GPS monitoring and to exclude him from two areas that J.S.J. frequented.

At the hearing on the State's motion to revoke Golston's bond, the State presented evidence of Golston's many text messages to J.S.J. In some of them, Golston wrote about missing his children, wanting to come home, and asking J.S.J. why she did this to him. The State argued that the messages, although non-threatening, were intended to instill guilt and to manipulate J.S.J. for having reported the incident. Golston insisted that he was only trying to reach out to his children, that he did not intend to violate the no-contact order, and that he was not a flight risk. The district court, unpersuaded, revoked Golston's bond.

2

Golston then filed several pro se motions about his representation and the revocation of his bond. On March 16, 2017, Golston filed a pro se motion to dismiss his appointed attorney, Jama Mitchell, and to appoint new counsel. It alleged:

- Mitchell was biased against him;
- Mitchell refused to file motions he had asked her to file;
- he no longer trusted Mitchell;
- Mitchell had said she was afraid of the judge, making Golston skeptical of her abilities; and
- Mitchell had refused to argue for pretrial services and/or electronic monitoring.

He also moved for the appointment of new counsel because "a pre-existing conflict of interest already exist[ed]" between himself and Mitchell.

The district court held a hearing on Golston's motion to dismiss his court-appointed attorney and his motion to appoint counsel. Golston voiced his concerns at the hearing, alleging that Mitchell was not advocating for him, should have moved to reinstate his bond, did not defend him, and would not represent him in the way that he needed.

Mitchell explained the events that led to Golston's bond being revoked. She had told Golston she was willing to move to modify his bond but such a motion would likely not be effective. Golston had not asked her to file any other motions. Mitchell denied having told Golston that she was afraid of the judge and called that allegation "blatantly false." She denied lying to Golston and having a breakdown in communication.

The district court denied Golston's request for new counsel, finding no justifiable dissatisfaction, no conflict of interest, no irreconcilable conflict, and no complete breakdown in communication. Soon thereafter, Golston and Mitchell separately moved to

3

modify Golston's bond. The district court denied those motions, finding that Golston's domestic violence offenses implicated a concern for public safety.

On April 17, 2017, Golston filed a motion for ineffective assistance of counsel seeking to replace Mitchell as his trial counsel. This motion claimed that Mitchell:

- had "a serious conflict of interest";
- was not acting in his best interest;
- did not represent him "as she should";
- was biased;
- refused to file requested motions;
- misrepresented the proceedings relating to his bond; and
- did not communicate with him or his family.

At about that same time, Golston filed a separate motion to appoint new counsel. This motion alleged:

- that he was not receiving a proper defense;
- that Mitchell was not representing him zealously; and
- that Mitchell was not acting in his best interest.

The district court then held a hearing on these two motions. Golston claimed that Mitchell was not showing him the evidence in the case and was not spending enough time on it. Mitchell responded that Golston knew of the evidence against him, that she would be ready for trial on the date assigned, and that she had never been dishonest with Golston. Although Golston wanted Mitchell to file another bond motion, she believed it would be frivolous. The court denied Golston's motions, noting that Golston had failed to

4

show justifiable dissatisfaction with Mitchell. The court told Golston he had a right to effective counsel but was not entitled to appointed counsel of his choice.

With both parties ready to go to trial, Golston entered a plea agreement the day trial was set to begin. He pleaded no contest to one amended count of attempted rape and one amended count of kidnapping. As the district court reviewed Golston's rights with him, Golston said he had not had enough time to discuss with counsel his rights and the charges against him. But when the district court responded by offering to give Golston more time to confer with Mitchell, Golston declined, saying he wanted to move forward and enter his plea. After completing the plea colloquy, the district court accepted Golston's plea of no contest to the amended charges of attempted rape and kidnapping.

Five days after he pleaded, Golston filed his first motion to withdraw his plea, arguing:

- he had been rushed into the plea deal and had entered it involuntarily;
- he was innocent of the charges; and
- his counsel had not zealously represented him.

He asked the court to appoint new counsel who would provide a proper defense. The district court summarily denied this motion, finding "that the motion is conclusory, and a review of the motion, files, and records of the case conclusively show[s] that [Golston] is not entitled to relief."

Golston then filed another motion entitled "Mandamus." In that motion, Golston:

- requested a new judge to hear his motion to withdraw plea;
- challenged his pre-sentence investigation report;

5

- alleged Mitchell had not properly investigated his case;

- alleged Mitchell was ineffective; and

- alleged Mitchell had misled and coerced him into his plea by saying he would receive a greater sentence if he did not enter a plea deal, yet he thought his actions merited only a charge of domestic battery.

Golston asked the court to continue sentencing. On the same day, Golston filed a pro se motion for an emergency hearing, again requesting a change of judge to hear his arguments.

Immediately before sentencing, the district court held a hearing to address Golston's newest motions. Golston clarified that he sought a new attorney because of a breakdown in communication. He alleged that Mitchell did not have enough time to represent him the way she should, that she had walked out of their recent meeting, and that she had misled and coerced him into taking a plea that he did not fully understand.

Mitchell said she had visited Golston frequently and there had been no breakdown in communication. She had walked out of their previous meeting when it became non-productive after Golston started yelling at her. She said she had answered Golston's questions but he did not like her responses and started yelling, so she left.

The district court found no basis to remove Mitchell. He found that any dispute between her and Golston was a conflict but was not irreconcilable—it resulted from Golston's not liking Mitchell's advice. Regarding Golston's request for a recusal of a different judge, the district court found the issue to be moot as no issues remained pending before the judge Golston had wanted removed from the case.

After the district court denied these motions, Golston alleged he had a constitutional right of counsel by choice. He asked the court for a continuance so his

6

family could retain new counsel to help him withdraw his plea. The district court denied that request, stating that Golston could hire another lawyer at any time but that the case had been continued once already and Golston had shown no basis to remove Mitchell.

In addressing Golston's new grounds for withdrawing his plea—that his plea was involuntary and that he was rushed and coerced into entering it—Mitchell explained to the court that Golston had had hours before the plea hearing to contemplate his plea, that she had spoken to him at length, that she had warned him it is difficult to withdraw a plea once it is entered, and that she did not coerce him into taking the plea. The court denied Golston relief on this issue, finding that his previous motion to withdraw had been heard, that the additional motion was moot, and that his new claims had no merit.

The court then sentenced Golston pursuant to the plea agreement to a controlling sentence of 168 months' imprisonment. Golston appeals.

*Did the district court err by denying Golston's presentencing motion to withdraw his plea?*

Golston first argues that the district court erred by summarily denying his presentencing motion to withdraw his plea. He argues that he had no opportunity to establish good cause to withdraw his plea, that new counsel was needed to help him argue that Mitchell was ineffective and conflicted during the plea process, and that the record does not conclusively establish that he was not entitled to relief. Golston properly notes that the district court failed to mention the *Edgar* factors.

*We review only Golston's first motion to withdraw his plea.*

Although Golston tried to withdraw his plea several times, his brief focuses on his first motion by challenging the motion to withdraw that the district court summarily

7

denied. Although his arguments appear to incorporate some issues raised in his second motion to withdraw his plea, entitled "Mandamus," we find he has not adequately preserved them**. See *State v. Weekes*, 308 Kan. 1245, 1247, 427 P.3d 861 (2018) (finding defendant waived his argument by incidentally mentioning it in a brief without making any substantive argument as to why the acts were an abuse of discretion). We also note that Golston received a hearing on his second motion, at which both he and his counsel explained their positions to the court. Thus, his second motion was not summarily denied.

*We have unlimited review over this question.*

Generally, we review the denial of a presentence motion to withdraw a plea under an abuse of discretion standard. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018). But when, as here, a motion to withdraw a plea is summarily denied without argument and additional evidence we exercise unlimited review. *State v. Moses*, 296 Kan. 1126, 1128, 297 P.3d 1174 (2013). This is because we have "the same access to the motion, records, and files as the district court" and can determine whether they conclusively show the defendant is not entitled to relief. *State v. Neal*, 292 Kan. 625, 629, 258 P.3d 365 (2011).

Edgar *factors govern presentencing motions to withdraw a plea.*

A defendant may withdraw a plea at any time before sentencing for good cause and within the discretion of the court. K.S.A. 2018 Supp. 22-3210(d)(1). In exercising its discretion, a district court may consider whether (1) the defendant was represented by competent counsel; (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) the plea was fairly and understandingly made. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). We refer to these three considerations as the *Edgar* factors.

8

*Golston fails to show that counsel failed to zealously represent him.*

Golston filed his first pro se motion to withdraw his plea five days after he entered his plea. It stated that he had been rushed into entering his plea, making it involuntary, and that Mitchell did not zealously represent him. It did not, however, otherwise allege that Mitchell's services were ineffective. The district court summarily denied Golston's motion, stating that "the motion is conclusory, and a review of the motion, files, and records of the case conclusively show[s] that [Golston] is not entitled to relief." Golston argues that he deserved to have a hearing on his motion and that the record does not conclusively establish that he was entitled to no relief.

Golston argues that the district court erred by summarily denying his motion to withdraw his plea without first conducting a hearing. He contends a hearing would have given him an opportunity to establish good cause to withdraw his plea and would have given the court an opportunity to inquire into his complaints about Mitchell and her potential conflicts of interest. But Golston's first motion to withdraw his plea alleged nothing about Mitchell other than the conclusory criticism that she was not providing "zealous representation." Golston neither alleged a conflict of interest nor made any specific complaints.

A district court does not need to conduct a hearing for every motion to withdraw a plea. "Requiring a hearing in every case in which a defendant seeks to withdraw his plea of guilty or nolo contendere would create an extreme burden on the courts, and such a rule is not feasible or justified." *State v. Jackson*, 255 Kan. 455, 459, 874 P.2d 1138 (1994). Instead, a hearing is limited to those times when the defendant's motion raises a substantial issue of fact or law. *State v. Frtiz*, 299 Kan. 153, 156, 321 P.3d 763 (2014). Mere conclusory statements cannot raise a substantial issue when no factual basis is alleged or appears in the record. *Jackson*, 255 Kan. at 463. Such is the case here. A hearing was unnecessary because Golston's claim asserted in his motion—that his

9

counsel failed to provide zealous representation—is vague and conclusory. See *Jackson*, 255 Kan. at 463.

The record also fails to support Golston's claims and shows that Mitchell represented Golston adequately. Golston provides no examples of ineffective representation, and the district court later acknowledged that Mitchell is an experienced, capable attorney. Mitchell navigated Golston's pretrial motions and requests and was prepared to go to trial. She obtained a favorable plea deal for Golston that included one dropped charge and two amended charges. Golston's complaints are thus unsupported.

*Golston fails to show he was rushed into a plea.*

The remaining allegation in Golston's motion is that he was rushed into entering the plea so it was involuntary. Yet Golston asserted no specific facts to support that conclusion. At any rate, the record refutes that conclusion. The judge who denied Golston's motion to withdraw his plea had recently accepted Golston's plea, so he did not need a hearing to determine the lack of merit to Golston's claim that he had entered the plea involuntarily. Golston was set to begin trial on the morning of May 8, yet his plea hearing did not occur until 2:48 p.m. During the intervening hours, Mitchell spoke to Golston and his mother to discuss the plea and its alternatives.

During the plea hearing, the judge offered Golston additional time to consider the plea, but Golston declined more time and chose to proceed. If proceeding with Golston's plea could be considered error, it was error invited by Golston. A full plea hearing followed, including questions about Golston's satisfaction with his attorney's services, a proffer of evidence by the State, and the positions of the State and the defense about sentencing. So the judge knew how much time Golston had in which to contemplate his decision and did not need to conduct a hearing to investigate his complaints. The files and

10

records show the same—Golston's motion raised no substantial issues of fact or law, and the district court had no need for an evidentiary hearing.

*The district court should have analyzed the* Edgar *factors.*

Golston also argues that the district court's failure to apply the *Edgar* factors was an abuse of discretion. Judicial action is abused if the action (1) is arbitrary, fanciful, or unreasonable, (2) is based on an error of law, or (3) is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

The *Edgar* case provides factors to guide a court's determination of whether a defendant has established good cause to withdraw a plea. Golston is correct that the district court did not mention the *Edgar* factors when it denied his motion to withdraw his plea. And it should have done so—the better practice is for a district court to expressly analyze the *Edgar* factors. But a court's failure to do so does not necessarily constitute an abuse of discretion.

Recent cases establish that the court, in its discretionary decision on good cause, is not required to consider *Edgar* factors that the defendant has not argued.

> "In *State v. Williams*, 290 Kan. 1050, 1053, 236 P.3d 512 (2010), it was also alleged that the district court did not consider two of the *Edgar* factors. The Kansas Supreme Court affirmed because the district court addressed all of the concerns raised by the defense. 290 Kan. at 1056. The Supreme Court cited its prior discussion of the *Edgar* factors in *Aguilar*, 290 Kan. at 512-13:
>
> > "'The *Edgar* factors remain viable benchmarks for judicial discretion but reliance on them to the exclusion of other factors has not only conflated the good cause and manifest injustice standards of K.S.A. 22-3210(d) but also may have overemphasized the role of plea counsel's competence in deciding presentence plea withdrawal motions. . . .

11

"'. . . All of the *Edgar* factors need not apply in a defendant's favor in every case, and other factors may be duly considered in the district judge's discretionary decision on the existence or nonexistence of good cause." [Citation omitted.]' *Williams*, 290 Kan. at 1054." *State v. Clark*, No. 116,891, 2018 WL 671857, at *4 (Kan. App.), *rev. denied* 308 Kan. 1596 (2018).

Nor is the district court required to make express findings on each *Edgar* factor. Instead, its implicit consideration is enough.

"Panels of this court have stated on several occasions that a district court is not required to make express findings on each *Edgar* factor. See, e.g., *State v. Simpson*, No. 109,063, 2014 WL 1193382, at *4 (Kan. App. 2014) (unpublished opinion).

'For one, the district court is not required to consider all three factors if a defendant supports his or her good cause with only one of the three. Additionally, the district court's implicit consideration of the *Edgar* factors—such as when the State discusses the factors in its argument—is sufficient. [Citations omitted.]' 2014 WL 1193382, at *4.

"In *State v. Wicken*, No. 101,974, 2010 WL 1078462, at *2 (Kan. App. 2010) (unpublished opinion), a panel of this court found no abuse of discretion even though there was no mention of the *Edgar* factors in the transcript of the motion hearing or in the district court's journal entry denying the defendant's motion to withdraw his plea." *Clark*, 2018 WL 671857, at *4.

The record here reflects that the district court implicitly considered the three Edgar factors and found them met.

The district court applied the first *Edgar* factor—whether defendant was represented by competent counsel—in deciding Golston's claim that his counsel had not zealously represented him and in later acknowledging that Mitchell is an experienced,

12

capable attorney. With respect to the second and third *Edgar* factors—whether defendant was misled, coerced, mistreated, or unfairly taken advantage of, and whether his plea was fairly and understandingly made—the judge who denied Golston's motion to withdraw his plea was the same judge who had recently taken Golston's plea. He had extensively questioned Golston about the voluntariness and understanding of his plea and was satisfied that he had not been coerced or pressured. The district court fully explained to Golston the consequences of his plea. The judge was aware of the length of time which Golston had to consider the plea and the surrounding circumstances and did not need another hearing to determine that Golston's claim of having entered the plea involuntarily lacked merit. When Golston later raised more specific complaints relating to his attorney and to his plea, the district court held hearings on them.

Under these circumstances, expressly enumerating the *Edgar* factors, although preferable, was unnecessary. Because a reasonable person would take the district court's position, we find no abuse of discretion in the district court's summary denial of Golston's motion to withdraw his plea.

*Did the district court abuse its discretion by denying Golston's request for substitute counsel at sentencing?*

After the district court denied Golston's motion to withdraw his plea, Golston filed a motion asking a new judge to hear his plea withdrawal motion, alleging that his counsel was ineffective and asking for substitute appointed counsel. The district court denied Golston's motion for substitute counsel and then sentenced him. Golston contends the court abused its discretion in so doing. We review a denial of substitute counsel for an abuse of discretion. *State v. Pfannenstiel*, 302 Kan. 747, 759-60, 357 P.3d 877 (2015).

*Golston had no right to choose appointed counsel.*

The Sixth Amendment to the United States Constitution gives defendants the right to effective assistance of counsel during all critical stages of a criminal proceeding, including sentencing. See *State v. Brown*, 300 Kan. 565, 574-75, 331 P.3d 797 (2014). But the Sixth Amendment does not guarantee the defendant the right to choose his or her appointed attorney. 300 Kan. at 574-75. Because a defendant has no right to choose appointed counsel, criminal defendants have no absolute right to substitute court-appointed counsel. *Pfannenstiel*, 302 Kan. at 759. To be entitled to appointment of new counsel, a defendant must show justifiable dissatisfaction with appointed counsel. A defendant establishes justifiable dissatisfaction by showing a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between counsel and the defendant. *Brown*, 300 Kan. at 575.

*The district court fulfilled its duty to inquire.*

When a defendant moves for the dismissal of his appointed attorney and alleges grounds that potentially establish justifiable dissatisfaction, the motion triggers the district court's duty to inquire into a potential conflict. *Pfannenstiel*, 302 Kan. at 760. This duty of inquiry can lead to three types of errors which we review on appeal for an abuse of discretion:  (1) when a district court learns of a potential conflict but fails to conduct an inquiry; (2) when a district court conducts an inquiry into a potential conflict but fails to conduct an "appropriate inquiry"; and (3) when a district court conducts an "appropriate inquiry" but still abuses its discretion when determining whether to substitute counsel. 302 Kan. at 760-62. If the district court has a reasonable basis to conclude that counsel could provide effective and fair representation, then the denial of a motion for new counsel cannot be an abuse of discretion. *State v. Staten*, 304 Kan. 957, 970, 377 P.3d 427 (2016); *State v. Sappington*, 285 Kan. 176, 196, 169 P.3d 1107 (2007).

14

Golston concedes that the district court conducted an inquiry into his allegations but alleges its denial of substitute counsel was still an abuse of discretion. Golston's motion which requested the dismissal of his court-appointed attorney and the appointment of new counsel alleged:

"The Defendant has barely seen his attorney for record and the Defendant does not believe counsel did anything to help the Defendant in this case. The Defendant prays [the court] would consider new counsel and a withdrawal of the Defendant's plea."

Golston argues that a conflict arose when Mitchell "actively advocated against his motions at sentencing" and that the district court failed to recognize the complete breakdown in communication between himself and Mitchell.

*Golston showed no complete breakdown in communication.*

To show justifiable dissatisfaction based on communication, Golston had to show an irreconcilable disagreement or a complete breakdown in communication between himself and Mitchell. A lack of cooperation or communication between a defendant and counsel does not in and of itself violate the Sixth Amendment right to counsel. *Ferguson*, 254 Kan. 62, 71, 864 P.2d 693 (1993). In respect to common arguments about the time spent on a case or with a client, "[a]n attorney's inability to shower as much personal attention upon a client as he or she would like does not necessarily rise to the level of a conflict of interest." *State v. Crum*, 286 Kan. 145, 158-59, 184 P.3d 222 (2008); *State v. McGee*, 280 Kan. 890, 897, 126 P.3d 1110 (2006). Even if an attorney is not meeting often with a client, it does not mean that the attorney is not working on the case. See *State v. Cook*, 45 Kan. App. 2d 468, 479, 249 P.3d 454 (2011). Ultimately, if the district court has reason to believe communication has not deteriorated to the point that appointed counsel cannot fairly present a defense, the court is justified in refusing to appoint new counsel. *State v. Bryant*, 285 Kan. 970, 986-87, 179 P.3d 1122 (2008).

15

In support of his claim of a complete breakdown in communication, Golston cites only one incident—that Mitchell walked out on him during one of their meetings. Mitchell admitted that she had walked out of one meeting at the jail because the meeting became unproductive after Golston yelled at her. The district court found that Golston was upset because he was not happy with Mitchell's advice, yet one heated meeting did not show a complete breakdown in communication. The district court had a reasonable basis for believing the attorney-client relationship had not deteriorated to the point of requiring the appointment of new counsel. As a result, we find the district court conducted an appropriate inquiry and acted within its discretion when determining whether to substitute counsel.

*Golston alleged no conflict of interest below.*

Golston also contends that Mitchell created a conflict of interest. Generally, a conflict exists when an attorney has divided loyalties or provides diluted representation. *Pfannenstiel*, 302 Kan. at 758. These situations can take many forms, and whether a conflict exists is evaluated on the specific facts of each case. 302 Kan. at 758. Golston alleges that Mitchell created a conflict of interest by advocating against his motions several times during relevant hearings.

The first occurred when Golston moved for the appointment of a new judge to hear his already-denied motion to withdraw his plea and for a continuance to hire conflict-free counsel. Mitchell told the court her client's motion was moot because the judge Golston wanted to remove was no longer involved in the case.

The second occurred when Mitchell told the court that a complete breakdown of communication had not occurred. Golston argues that "[b]y actively arguing against Mr. Golston on his motion for substitute counsel, Mitchell abandoned her role as an advocate."

16

The third occurred when Mitchell argued against the plea-withdrawal claims in Golston's motion. Golston acknowledges Mitchell's duty of candor to the court but argues that "this duty did not extend to revealing their private communications, or to advocating *against* his motions and in her own best interest." He therefore argues that the district court abused its discretion in denying his motion for substitute counsel.

But Golston did not present any of these alleged conflicts below, either in his written motion or in his oral complaints to the district court. Generally, issues not raised before the district court cannot be raised on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34) requires an appellant explain why an issue was not raised below and should be considered for the first time on appeal. In *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), our Supreme Court held that litigants who violate this rule risk a ruling that the issue is improperly briefed, and the issue will be considered waived or abandoned. The Kansas Supreme Court strictly enforces that rule. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015). Golston does not explain in his brief why this court should consider this issue for the first time on appeal. For that reason, we do not reach the merits of Golston's claims of conflict.

But even had we decided the issue, we would not have found in Golston's favor. See *State v. McDaniel*, 306 Kan. 595, 611-12, 395 P.3d 429 (2017) (finding no conflict when defendant's counsel allegedly advocated against him by expressing her opinion on the merits of his pro se motion to dismiss the case); *Pfannenstiel*, 302 Kan. at 766 (finding an attorney's truthful recounting of facts that contradict defendant does not create conflict of interest, although going beyond factual statements and advocating against client's position could); *McGee*, 280 Kan. at 896 (finding counsel's contradicting facts did not compromise confidential information, concede defendant's guilt, or show any interest that materially limited his representation of defendant).

17

Mitchell advocated in Golston's best interests while fulfilling her professional requirements to the court. Mitchell's candor to the court, her explanations of the facts, and her professional evaluation of the circumstances were appropriate given the circumstances. Her explanation about her disagreement with her client did not require substitute counsel to be appointed. Ultimately, the district court had a reasonable basis to conclude that Mitchell could effectively and fairly represent Golston. Its decision not to appoint substitute counsel is not an abuse of discretion. See *Sappington*, 285 Kan. at 196.

*Did the district court err in denying Golston's motion to continue sentencing?*

Before sentencing, Golston asked the district court to continue sentencing so that he or his family could obtain private counsel "to withdraw [his] plea and for [his] defense." The district court acknowledged Golston's right to hire a private attorney, but denied Golston's request for a continuance, stating that Golston had not already hired an attorney, that the court already granted one continuance in the case, and that no basis existed to remove Mitchell. Golston argues that the district court abused its discretion by denying him a continuance.

*We review this decision only for an abuse of discretion.*

The decision to grant a continuance based on a defendant's desire to retain private counsel is within the trial court's discretion that should not be overturned absent a showing of abuse. *State v. Kirkpatrick*, 286 Kan. 329, 345-46, 184 P.3d 247 (2008) (quoting 17 Am. Jur. 2d, Continuance § 69), *abrogated on other grounds by State v. Barlett*, 308 Kan. 78, 418 P.3d 1253 (2018). In any claim challenging the exercise of judicial discretion, the party alleging an abuse of discretion bears the burden of establishing the abuse. *State v. Cavaness*, 278 Kan. 469, 478, 101 P.3d 717 (2004).

*We apply* Anthony *factors to guide this decision.*

An element of the Sixth Amendment right to counsel is that a defendant must be afforded a reasonable opportunity to secure counsel of his or her own choosing. *State v. Anthony*, 257 Kan. 1003, 1018, 898 P.2d 1109 (1995) (citing *Powell v. Alabama*, 287 U.S. 45, 53, 53 S. Ct. 55, 77 L. Ed. 158 [1932]). But this right should not be "manipulated to impede the efficient administration of justice." 257 Kan. at 1019. When a criminal defendant's constitutional right to secure counsel of his choice conflicts with the trial judge's discretionary power to deny a continuance, the reviewing court must balance several factors to determine whether the trial court's conduct was "fair and reasonable." *United States v. Kelm*, 827 F.2d 1319, 1322 (9th Cir. 1987). Those factors include:

> "(1) whether a continuance would inconvenience witnesses, the court, counsel, or the parties; (2) whether other continuances have been granted; (3) whether legitimate reasons exist for the delay; (4) whether the delay is the fault of the defendant; and (5) whether the denial of a continuance would prejudice the defendant." *Anthony*, 257 Kan. at 1120.

As to the first two factors, it is undisputed that the district court had already granted a continuance in the case. Another continuance likely would have inconvenienced the court, counsel, and the victim, disrupting the schedules of the court and parties. See *United States v. Riveria*, 900 F.2d 1462, 1475-76 (10th Cir. 1990). The parties and the court had already submitted several pretrial motions, had pretrial hearings, and were prepared to go to trial before Golston entered the plea deal and filed his post-plea motions. The victim was still involved and had been contacted by both Golston and his mother.

As to the next two factors, Golston presents no legitimate reason for having delayed his request to hire outside counsel, and that delay cannot be attributed to anyone but Golston. The district court found no reason to remove Mitchell as Golston's appointed

19

attorney, even after Golston's initial complaints. Golston argues that he did little to cause delay in his request because he "expressed genuine dissatisfaction with his counsel at every available opportunity." But the record does not show that Golston made any previous effort or request to secure counsel of his own choosing. The district court appointed Mitchell as Golston's counsel in January 2017. Despite his claimed dissatisfaction with her, Golston did not seek a continuance to hire a private attorney until July 2017, after Mitchell had prepared for trial and negotiated a plea deal for him. Golston did not suggest which private attorney he sought to hire, whether he had contacted any private attorneys about his case, or whether he had obtained the financial means to do so. Golston did not show he had ready and willing substitute counsel.

As to the last factor, the district court's denial of a continuance did not prejudice Golston. The district court had already ensured that Golston's plea was freely and voluntarily made. That plea was beneficial to Golston, as the State dropped one charge and amended the remaining two. Golston, fully aware of his decision and the consequences that would flow from it, has shown no prejudice by the district court's denial of his oral request for a continuance. See *Kirkpatrick*, 286 Kan. at 345-46. We find no abuse of discretion by the district court.

Affirmed.