(249 P.3d 454)
No. 102,375

STATE OF KANSAS, *Appellee,* v. DANIEL RAY COOK, *Appellant.*

Opinion filed March 4, 2011.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Ruth A. Ritthaler*, assistant county attorney, and *Steve Six*, attorney general, for appellee.

Before PIERRON, P.J., MARQUARDT and HILL, JJ.

PIERRON, J: Daniel Ray Cook appeals his conviction for felony possession of marijuana. He argues the trial court erroneously admitted evidence of his prior marijuana conviction, the trial court failed to fully investigate his requests for a new attorney, the prosecutor committed prosecutorial misconduct during closing argument, the cumulative effect of the trial errors denied him a fair trial, and the trial court erred in not requiring his criminal history to be proven to a jury beyond a reasonable doubt.

On September 30, 2008, Officer Brandon Pursley of the Coffeyville Police Department responded to a "shots fired" call from dispatch. The time was nearly midnight. Dispatch reported three suspects, all black males, each by one distinguishing characteristic: (1) heavy set; (2) small; and (3) wearing a light colored hoodie. As he approached, Officer Pursley spotted a black male wearing a light colored hoodie running from the scene. Officer Pursley pursued the suspect on foot and saw the suspect remove a light colored hoodie behind a laundromat and then continue running. Officer Pursley caught the suspect and at gun point ordered him to the ground. During a weapons and contraband search, Officer Pursley found a bag of marijuana in the suspect's right, front pants pocket.

On cross-examination, Officer Pursley testified he had not witnessed the shooting but had heard the shots. He was 50 yards away from the suspect when he first saw him and he never lost eye contact. When he caught the suspect, he knew it was Cook because he was familiar with most people in town and had several contacts with Cook in the past.

Officer Nick Reed also responded to the "shots fired" dispatch. He saw Officer Pursley chase Cook. He lost contact briefly but then saw Officer Pursley search Cook and discover the bag of marijuana. Officer Reed asked Cook why he was running away, and

Cook responded that he saw flashlights, got scared, and decided to run. Cook also said that his jacket just fell off while he was running.

Officer Daniel Belbot testified he was one of the first officers on the scene and saw a black male wearing a light hoodie running away. He reported this to dispatch. The next time he saw the suspect was after Officer Pursley had taken him into custody. Officer Belbot said Cook was the same individual he had seen earlier and the officers had the same light hoodie he had seen as well.

Cook testified in his own defense. He testified he was meeting friends at the apartment complex in question. He never heard any shots, but he saw people with flashlights. He was afraid and ran. However, he stopped when he saw the police. After he was arrested, he told the officers the light colored hoodie was not his. The first time the officers showed him the jacket was the first time he had seen it. Cook claimed the officers were fabricating the marijuana possession charge and had planted the bag on him.

Cook said the officers questioned him about the shooting at the station. He told them he did not know anything about it. Cook indicated the officers told him they knew who did the shooting and they needed Cook to testify. Cook said he could not testify to what he did not know. Cook claimed the officers told him that since he was not cooperating and they knew he had a prior possession conviction, they were going to charge him with possession of marijuana.

Cook was convicted of felony possession of marijuana. At trial, evidence of his prior marijuana conviction was allowed to come before the jury. Cook's presumptive sentence was 18-22 months' imprisonment. The trial court sentenced him to 20 months' imprisonment, with the sentence served consecutive to the incarceration term of his prior sentence. Cook appeals.

Cook argues the trial court erred in admitting evidence of his prior conviction for possession of marijuana. We find that while this evidence may have been probative for the prosecutor's questioning, it was clearly immaterial in Cook's trial under our understanding of Kansas evidentiary law.

The following questioning occurred during the prosecution's cross-examination of Cook:

"Q. How do you know you're not supposed to use it [marijuana]?

"A. It's against the law.

"Q. How do you know that?

"A. Watching TV.

"Q. That's the only way you know it?

"A. As far as—

"Q. Well, you know you're under oath?

"A. Yes, Sir.

"Q. Okay. So how do you know it's illegal to have it [marijuana]?

"MR. BERNHART [Defense Counsel]: Your Honor, we're going to object. I think it's been asked and answered.

"MR. MARKLE [Prosecutor]: I have the right to follow up, Your Honor.

"THE COURT: If counsel would approach the bench.

(At the Bench, on the record, outside the hearing of the jury. Defendant present at the Bench.)

"THE COURT: Are you about ready to get into prior convictions?

"MR. MARKLE: Uh-huh. Two reasons: Number one, this is the only—this shows he's biased. Second thing is, he testified on Direct that he doesn't have a place to live, and doesn't have any place in Kansas. He's—we are entitled to cross-examine his credibility.

"THE COURT: Mr. Bernhart?

"MR. BERNHART: Well, I would think—again, the objection was: It's been asked and answered. He's asking for another answer, and I don't think—

"MR. MARKLE: I'm giving him his opportunity to come clean.

"THE COURT: Do you have any objection to what Mr. Markle is going to try to get into?

"MR. BERNHART: Well, I mean, if he tries to get into prior convictions, yeah, I am going to object to that. It's outside the scope of Direct examination.

"THE COURT: Okay.

"MR. MARKLE: The Defendant is not allowed to just get up there and lie.

"THE COURT: Okay. Well, the objection is overruled. You can continue Mr. Markle.

"THE REPORTER: Give me a second, please.

"THE COURT: Mr. Markle, if you'll give Ms. Smith a few moments to—

"THE REPORTER: Okay. I'm ready."

The prosecutor proceeded to question Cook about documents pertaining to Cook's prior conviction in July 2007 for possession of marijuana and that he was still on probation for that conviction. Defense counsel repeatedly objected to the prosecutor's questions.

There was also a second instance where K.S.A. 60-455 evidence came before the jury. Cook does not cite to this testimony on appeal. During the State's rebuttal, Officer Reed testified that he

knew Cook from executing a prior search warrant for narcotics. Defense counsel objected. The prosecutor responded that the testimony was relevant not for Cook's involvement, but rather for the officer's knowledge of Cook. The trial court sustained the objection and held that the only testimony the jury needed to know was that Officer Reed had met Cook three times in the past.

When reviewing a trial court's decision to admit evidence, an appellate court first determines whether the evidence was relevant. There are two elements of relevant evidence: a materiality element and a probative element. *State v. Houston*, 289 Kan. 252, 261-62, 213 P.3d 728 (2009). Evidence is relevant and probative if it has " 'any tendency in reason to prove' " a fact. *State v. Reid*, 286 Kan. 494, 505, 186 P.3d 713 (2008) (quoting K.S.A. 60-401[b]). Whether evidence has probative value is reviewed for abuse of discretion. In determining whether the evidence is "material," the analysis focuses on whether the fact to be proved is " ' "significant under the substantive law of the case and properly at issue. [Citation omitted.]" ' " 286 Kan. at 505. Appellate review for materiality is de novo. *State v. Wells*, 289 Kan. 1219, 1226, 221 P.3d 561 (2009). Nevertheless, even if evidence is both probative and material, the trial court must still determine whether the probative value of the evidence outweighs its potential for producing undue prejudice. Appellate courts review this determination for abuse of discretion. 289 Kan. at 1227; see also *State v. Dixon*, 289 Kan. 46, 69-70, 209 P.3d 675 (2009) (applying the above standards of review to an evidentiary issue involving non-K.S.A. 60-455 evidence).

Once relevance is established, the trial court must then apply the statutory rules controlling the admission and exclusion of evidence. These statutory rules are treated either as a matter of law or as an exercise of the trial court's discretion, depending upon the rule in question. Therefore, the standard of review that is applicable on appeal will depend upon which rule the court applied to determine the admissibility of the evidence at issue. *State v. Riojas*, 288 Kan. 379, 383, 204 P.3d 578 (2009).

At the time of Cook's crime, K.S.A. 60-455 provided as follows:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to

commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The problem in the case at bar is that the trial court did not inquire of, nor did the prosecutor cite, a provision of K.S.A. 60-455 for how Cook's prior conviction was admissible. The prosecutor's rationale for admitting Cook's prior conviction was that it showed that Cook was biased, that he lied about not having a place to live in Kansas as required by the conditions of his probation, and that Cook could not just get up on the stand and lie. The court did not determine whether the evidence was relevant to prove a material fact under K.S.A. 60-455 such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The State argues Cook chose to testify and his version of events differed significantly from the testimony of the police officers. The State contends his veracity was subject to scrutiny by the jury, the prior conviction was relevant in the context of Cook's responses to questions as a witness testifying under oath, and it was reasonable to believe that the limited information regarding Cook's prior conviction did not influence the jury any more than any other testimony presented by Cook. The State also contends the evidence against Cook was overwhelming and admission of the prior conviction was harmless.

The State fails to establish the relevance of Cook's prior conviction under Kansas law. His prior conviction is probative because it has a tendency to prove the fact that he knew possessing marijuana was illegal. However, his prior conviction is not material because the fact that Cook knew possessing marijuana was illegal was already established by his testimony and any other way that he knew it was illegal was not a fact that is significant under the law of the case and properly at issue. See *Reid*, 286 Kan. at 505. Without establishing the materiality prong of the relevance test, the trial court erred in admitting Cook's prior conviction.

Both Cook and the State cite *State v. Boggs*, 287 Kan. 298, 197 P.3d 441 (2008), for our consideration. However, as the State points out, *Boggs* was a case of nonexclusive possession of a glass marijuana pipe discovered under the passenger seat of the car where Boggs had been previously sitting. The court stated: "Because Boggs' only defense was that he did not possess the glass pipe, the element of intent—and the related elements of knowledge and absence of mistake or accident—were not at issue in this case." 287 Kan. at 315. The *Boggs* court agreed with the Kansas Court of Appeals that the admission of Boggs' statement to detectives that he had smoked marijuana about a month before the arrest was reversible error in violation of K.S.A. 60-455. 287 Kan. at 315-19.

The *Boggs* court reemphasized the dangers in allowing prior crimes evidence when it does not fall within the admissibility standards of K.S.A. 60-455:

"At least three types of prejudice can follow from the improper admission of evidence of other crimes or civil wrongs. First, a jury might well exaggerate the value of other wrongful acts as evidence proving that because the defendant has committed a similar wrongful act before, it might properly be inferred that he or she committed this one. Second, the jury might conclude that the defendant deserves punishment because he or she is a general wrongdoer even if the prosecution has not established guilt beyond a reasonable doubt in the prosecution at hand. Third, the jury might conclude that because the defendant is a criminal, the evidence put in on his or her behalf should not be believed." 287 Kan. 298, Syl. ¶ 2.

An error in the admission of or instruction upon K.S.A. 60-455 evidence is not automatically reversible; it is evaluated under a harmless error analysis. See K.S.A. 22-3414(3); K.S.A. 60-261; *State v. Gunby*, 282 Kan. 39, Syl. ¶ 4, 144 P.3d 647 (2006). The error in the present case was not harmless. We agree with Cook that the only purpose for presenting evidence of his prior marijuana conviction was to show his propensity to possess marijuana. The prejudice of this propensity evidence is exactly the unfairness cautioned by *Boggs*. The evidence did not have any tendency to prove any material fact at trial.

There is another relevant statute not cited by either party. Evidence to impeach a witness' credibility is relevant. However, the admission of another crime to impeach a witness' credibility is governed by K.S.A. 60-421, which provides:

"Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his or her credibility. If the witness be the accused in a criminal proceeding, no evidence of his or her conviction of a crime shall be admissible for the sole purpose of impairing his or her credibility unless the witness has first introduced evidence admissible solely for the purpose of supporting his or her credibility."

K.S.A. 60-421 prevents the State from using a defendant's prior convictions for impeachment unless the defendant opens the door by introducing evidence that he or she is credible. A criminal defendant does not place his or her credibility in issue merely by taking the witness stand. See *State v. Macomber*, 241 Kan. 154, 157-58, 734 P.2d 1148 (1987) (reversing defendant's conviction because the State improperly questioned the defendant regarding prior crimes during cross-examination); *State v. Quick*, 229 Kan. 117, 120-22, 621 P.2d 997 (1981) (same); *State v. Harris*, 215 Kan. 961, 963, 529 P.2d 101 (1974) (same); *State v. Harris*, 215 Kan. 649, 651-52, 527 P.2d 949 (1974) (same). The court in *Macomber* stated: "A defendant must have the right to deny the charges against him and to maintain that he has consistently done so without fearing such testimony will render evidence of other crimes admissible." 241 Kan. at 157.

While there may be opportunities to use K.S.A. 60-455 evidence to impeach the credibility of the testifying witness, in Cook's case the prejudice of the evidence is overwhelming in comparison to the materiality of the evidence. Under the facts of this case, exactly how Cook knew marijuana was illegal and why he did not have a place to live in Kansas does not open the door to evidence of Cook's prior conviction despite the ensuing credibility battle.

We are not comfortable holding that beyond a reasonable doubt, the admission of Cook's prior conviction had little to no effect on the jury's verdict in this case. On the contrary, we find the erroneously admitted prior conviction likely prejudiced the jury and was a compelling factor in Cook's conviction.

Cook briefly touched on the fact that the trial court failed to give a cautionary instruction regarding his prior conviction. Cook raises no substantive argument in this regard.

The *Gunby* court, 282 Kan. at 58-59, set forth the following precedent regarding this cautionary instruction:

> "In short, a trial judge should give such a K.S.A. 60-455 limiting instruction, but the failure to do so, though error, will no longer demand automatic reversal. Where the complaining party neither requested the instruction nor objected to its omission, the failure to give the instruction will be reversible only if clearly erroneous. *State v. Pabst*, 273 Kan. 658, 660, 44 P.3d 1230, *cert. denied* 537 U.S. 959 (2002). ' "Instructions are clearly erroneous only if the reviewing court is firmly convinced there is a real possibility that the jury would have rendered a different verdict if the error had not occurred." [Citation omitted.]' *State v. Shirley*, 277 Kan. 659, 666, 89 P.3d 649 (2004). In the event a K.S.A. 60-455 limiting instruction was sought at trial and refused in error, we will examine the error for harmlessness under the typical rule of K.S.A. 60-261 (error must be 'inconsistent with substantial justice')."

Whether requested or not, the lack of a cautionary instruction in this case is another contributing factor in the fairness, or lack thereof, of Cook's trial.

Next, Cook challenges the prosecutor's closing argument. he argues the prosecutor improperly brought his prior conviction into trial and then compounded the error in closing argument by implying that Cook was not credible because he failed to volunteer that information before the prosecutor had to force it out of him. Cook also argues the prosecutor improperly shifted the burden of proof to him when the prosecutor told the jury that the defense never presented any impeachment evidence such as the officer's falsifying evidence in other cases or messed up the chain of custody.

Cook did not object to the challenged statements during the State's closing argument, but a contemporaneous objection is not required to preserve a prosecutorial misconduct claim based on comments made during voir dire, opening statements, or closing argument, which are not evidence. *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009).

Cook challenges following statements made by the prosecutor during closing argument:

"What did you hear on Rebuttal? Does he know them? They certainly know him. Okay.

"Didn't have the hoodie. Well, we produced the hoodie. Okay. You know, I guess that's the essence of credibility. Who do you believe?

"And then he tells you he didn't have this marijuana at all, because he knows from watching television you're not supposed to have marijuana. Okay. He knows a little more than that. He could have told you right from the beginning, and that would have been the end of it. He chose not to. Those are the kinds of things you talk about when you talk about credibility.

. . . .

"So you got a choice to make, I guess. Do you believe the story that's told here in the courtroom for the first time, with no supporting evidence of any kind, no impeachment of any kind of these officers? You know, nothing was brought up about, they've falsified evidence before, or they've—they've messed up the evidence chains of custody, anything like that. All right.

"These are just everyday street cops out there doing their job. But somehow they took it upon themselves to just manufacture this marijuana."

Appellate review of an allegation of prosecutorial misconduct involving improper comments to the jury requires a two-step analysis. First, the appellate court decides whether the comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. Second, if misconduct is found, the appellate court must determine whether the improper comments constitute plain error; that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. McReynolds*, 288 Kan. 318, 323, 202 P.3d 658 (2009).

In the second step of the two-step analysis, the appellate court considers three factors: (1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. *McReynolds*, 288 Kan. at 323. All of these factors should be given equal weight and the third factor may not override the first two factors unless the harmless error tests of both K.S.A. 60-261 (namely refusal to grant new trial is inconsistent with substantial justice) and *Chapman v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 (1967) (namely conclusion beyond a reasonable doubt that the error had little, if any, likelihood of having changed the

result of the trial), have been met. *State v. Albright*, 283 Kan. 418, 428, 153 P.3d 497 (2007).

The portion of closing argument challenged by Cook was outside the wide latitude that a prosecutor is allowed in discussing the evidence. As we previously concluded in the context of K.S.A. 60-455, the evidence of Cook's prior conviction was not relevant in the case and should have been excluded by the trial court. In terms of prosecutorial misconduct, the State's actions meet the first two prongs of the above test and the State's actions cannot be defended by any claim of overwhelming evidence. The prosecutor's question was a back-end attempt to allow the jury to hear that Cook had a prior marijuana conviction. The prosecutor's conduct was intentional, gross, and flagrant and demonstrated an ill will on his part to obtain a conviction at the expense of Cook's right to a fair trial. This case was a credibility battle. The jury had the duty to weigh Cook's credibility verses the police officers' credibility. The prosecutor's actions of presenting the jury with the evidence of Cook's prior marijuana conviction unconstitutionally unleveled the credibility playing field by creating an inference that since Cook had a prior marijuana conviction, he certainly was guilty of marijuana possession in this case.

We believe the aforementioned errors also weave themselves into cumulative error. Since our rulings are subject to review, we will consider the issue of possible cumulative error. The resulting combination of admitting Cook's prior conviction, the prosecutor's accentuation of the erroneous admission of the conviction in closing argument, and the lack of any court direction through a cautionary instruction denied Cook a fair trial.

"Cumulative error, considered collectively, may be so great as to require reversal of a defendant's conviction. The test is whether the totality of the circumstances substantially prejudiced the defendant and denied him or her a fair trial. No prejudicial error may be found under the cumulative error doctrine if the evidence against the defendant is overwhelming." [Citation omitted.] *Dixon*, 289 Kan. at 71.

The cumulative error determination involves a great deal of subjectivity, and we find the compilation of the many errors in this

case require a reversal of Cook's conviction. See *State v. Nguyen*, 285 Kan. 418, 437, 172 P.3d 1165 (2007).

Next, Cook argues the trial court erred when it failed to fully investigate his request for a new attorney.

We review these decisions by the trial court for any abuse of discretion. See *State v. McGee*, 280 Kan. 890, 894, 126 P.3d 1110 (2006). The applicable standard is stated in *State v. Bryant*, 285 Kan. 970, Syl. ¶ 14, 179 P.3d 1122 (2008):

"To warrant substitute counsel, an indigent defendant must show 'justifiable dissatisfaction' with appointed counsel. Justifiable dissatisfaction includes a showing of a conflict of interest, an irreconcilable conflict, or a complete breakdown in communications between counsel and the defendant. But ultimately, as long as the trial court has a reasonable basis for believing the attorney-client relation has not deteriorated to a point where appointed counsel can no longer give effective aid in the fair presentation of a defense, the court is justified in refusing to appoint new counsel."

When the district court learns of a possible conflict of interest between appointed counsel and a defendant charged with a felony, the district court has a duty to ensure that the defendant's Sixth Amendment right to counsel is not violated. *State v. Vann*, 280 Kan. 782, Syl. ¶ 1, 127 P.3d 307 (2006).

Cook was charged on October 8, 2008. Bernhart was appointed to represent Cook on October 10, 2008. Cook's preliminary hearing was held on October 30, 2008. On November 20, 2008, Cook entered a not guilty plea. On December 11, 2008, Cook appeared with Bernhart at a hearing to determine the March 30, 2009, trial date.

In his first letter to the trial court, Cook asked the court for new counsel because Bernhart had only been to see him once during the 6 months he had been in jail. The court had a hearing to address Cook's letter and told him that if he ever met the legal standard for appointment of substitute counsel the court would release Bernhart, but that Cook had not established the appropriate standard yet. The court acknowledged Cook's complaint that Bernhart had not been to the jail frequently enough. However, the trial court assured Cook that Bernhart was working on his case even though he was not frequently visiting with him.

In his second letter to the trial court, Cook alleged that during a meeting to discuss the case, Bernhart hurriedly had him sign several documents without explaining them, he made a racial comment, and he was disrespectful and upset because Cook had previously tried to fire him.

It is clear that Cook had the standard number of hearings where he appeared with his attorney through December 2008. His trial was March 2009. Presumably conversations occurred about his case during those hearings. By our count there were also two independent meetings between Cook and Bernhart before trial. While there was certainly not a great deal of conversation about his case, conversation did occur.

The relationship between a defendant and his or her lawyer can often be strained at times. However, the existence of a strained relationship does not necessarily amount to an irreconcilable conflict or demonstrate a complete breakdown in communications. See *McGee*, 280 Kan. at 894; *State v. Jasper*, 269 Kan. 649, 654, 8 P.3d 708 (2000). At the trial and all hearings thereafter, our reading of the record does not demonstrate that Cook and Bernhart were having any problem communicating. Cook raised no objections to the trial court. We also recognize that Bernhart never filed a motion to withdraw because of any irreparable conflict. In short, we agree with the trial court that Cook failed to establish a justifiable dissatisfaction with appointed counsel such that the court abused its discretion in denying new counsel.

It appears Cook's complaints are with the amount of time and attention Bernhart was giving to his case. Cook has not alleged any viable type of conflict of interest. "An attorney's inability to shower as much personal attention upon a client as he or she would like does not necessarily rise to the level of a conflict of interest. See *McGee*, 280 Kan. at 897 (disagreement about the amount of time and attention defendant should receive does not rise to the level of a conflict of interest)." *State v. Crum*, 286 Kan. 145, 158-59, 184 P.3d 222 (2008).

The trial court did not abuse its discretion in denying what was essentially a motion to substitute appointed counsel.

Last, Cook asserts the trial court violated his constitutional rights by using his criminal history score to increase the sentence imposed without requiring the prior convictions to be put before the jury and proven beyond a reasonable doubt. Cook cites *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), to support his argument and concedes our Supreme Court rejected this argument in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002), but includes this issue to preserve it for federal review.

This court is duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007). Because our Supreme Court continues to adhere to its holding in *Ivory*, see, *e.g.*, *State v. Raschke*, 289 Kan. 911, 912, 219 P.3d 481 (2009), this argument fails.

Reversed and remanded for new trial.