NOT DESIGNATED FOR PUBLICATION

No. 127,325

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT WAYNE EVEL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ellis District Court; GLENN R. BRAUN, judge. Oral argument held November 20, 2025. Opinion filed February 6, 2026. Reversed and remanded with directions.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., BRUNS and COBLE, JJ.

CLINE, J.: This appeal involves an all too common, but nonetheless tragic, situation: sexual abuse reported years later, without physical evidence or witnesses to corroborate the allegations. As a result, these cases necessarily turn on the credibility of the accuser and the accused.

Here, a child—whom we call Jane—accused Robert Wayne Evel of sexual abuse about three years after the incidents occurred. After a jury trial, Evel was convicted of several serious sex offenses. He appeals these convictions for several reasons, including

1

claiming that he did not receive a fair trial and that the evidence was insufficient to support two of the convictions.

As for the first claim, Evel contends that the State unfairly bolstered Jane's credibility at trial through improper statements made by the prosecutor in opening statements and closing arguments. And he contends that the State unfairly damaged his credibility through the improper admission of K.S.A. 60-455(d) evidence, which the State had agreed before trial was inadmissible. After a review of the record, we agree. And given the importance of Evel's and Jane's credibility in this case, we cannot find these errors were harmless. We therefore must reverse his convictions and remand for a new trial.

Evel also claims the trial evidence was insufficient to support two of his convictions. However, after reviewing the evidence, we disagree. We deny his request to reverse with prejudice, meaning the State may retry him on these charges.

FACTUAL AND PROCEDURAL BACKGROUND

Evel's convictions arose out of his interactions with 10-year-old Jane over the course of a summer. About three years later, Jane disclosed to her therapist that Evel sexually abused her. Her therapist reported these allegations to law enforcement.

At trial, Jane testified about an incident when she and Evel were lying on a bed, watching TV together. She said, "[A]ll of a sudden, [Evel] said that he wanted to try something." He then took off her pants and put his mouth on her vagina, asking her if she liked it. She shook her head no, and he said okay. Evel then got up. While she could not recall all of the details, Jane testified, "I just remember hearing his pants drop, and then all of a sudden he was trying to penetrate me. I don't know if he successfully did it . . . but I remember the pain."

2

Jane also described another incident, after Evel took her out for a snow cone. She said on the way home, Evel "made [her] lay on his lap while he stuck his hand down [her] shirt and played with [her] boobs." After they got home, Jane said Evel followed her into her room. She remembered hearing his pants drop again, and then Evel tried to push his penis into her vagina. She does not remember if he was successful. But she said he stated if she told anyone what happened, her sick brother would lose his medical insurance. Jane also said Evel threatened that if she told anyone, he would hurt her or her family. These remarks scared Jane enough that she did not tell anyone what happened.

Eventually, Jane disclosed the abuse to her therapist. At first, she did not say Evel's name. But then, another time, she accidentally did, at which point the therapist reported what Jane told her to law enforcement.

When Evel testified, he described Jane as a disturbed child who was often seeking attention. He denied abusing Jane or ever being alone with her.

At the end of the trial, the jury found Evel guilty of aggravated criminal sodomy, attempted rape, aggravated indecent liberties with a child, and criminal threat. The district court sentenced him to life without the possibility of parole for 50 years. Evel timely appealed his convictions.

REVIEW OF EVEL'S APPELLATE CHALLENGES

*Did the prosecutor make erroneous statements in opening and closing which unfairly prejudiced Evel, depriving him of a fair trial?*

Evel first challenges several statements made by the prosecutor in opening and closing, which Evel contends were erroneous and deprived him of a fair trial. The State, for its part, claims the prosecutor properly commented on the evidence and therefore committed no error.

Evel only objected to one of the prosecutor's statements, which was made during closing. Nonetheless, Kansas appellate courts will review a prosecutorial error claim based on a prosecutor's comments during voir dire, opening, or closing even without a timely objection. But the court may figure the presence or absence of an objection into its analysis of the alleged error. *State v. Bodine*, 313 Kan. 378, 406, 486 P.3d 551 (2021).

*Standard of Review and Relevant Legal Framework*

Kansas appellate courts use a two-step process to evaluate claims of prosecutorial error: first, we determine whether an error occurred. If so, we then look at whether that error prejudiced the defendant:

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citations omitted.]" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

In determining whether the prosecutor erred here, we are mindful that prosecutors have wide latitude in the language and manner of the presentation of their openings and closings. *State v. Foster*, 290 Kan. 696, 722, 233 P.3d 265 (2010). They can argue reasonable inferences from the evidence, but they may not dilute the State's burden of proof, vouch for the credibility of their witnesses, misstate the law, or make statements

that inflame the passions or prejudices of the jury. *State v. Magallanez*, 290 Kan. 906, 914-15, 235 P.3d 460 (2010).

*Step one: Were any of the prosecutor's statements erroneous?*

1. *Did the prosecutor's statements about framing the case as one in which the jury must believe either Jane or Evel misstate the reasonable doubt standard, and thus constitute error?*

Evel first challenges how the prosecutor framed the case for the jury. He contends the prosecutor diluted the State's burden of proof by characterizing belief of a complaining witness' testimony as proof beyond a reasonable doubt. That is, he contends the prosecutor basically told the jury that the State met its burden of proof if the jury believed Jane's testimony.

Evel points out our court found this practice was error in *State v. Mukes*, No. 117,082, 2018 WL 4264865 (Kan. App. 2018) (unpublished opinion). As we explained there:

"But a juror's belief that [a witness] was telling the truth isn't necessarily the same as proof beyond a reasonable doubt. A juror might find it probable that [a witness] is telling the truth; for that juror, that may be enough to 'believe' [the witness]. That wouldn't be the same as proof beyond a reasonable doubt—and, of course, the jurors are supposed to take all the testimony into account, not each witness in isolation." 2018 WL 4264865, at *3.

Like the case here, *Mukes* involved sex offense charges without physical evidence that turned on the credibility of the victim's testimony (although, in *Mukes*, Mukes' sister Jasmine also provided corroborating testimony). 2018 WL 4264865, at *3. In closing, the prosecutor outright told the jury: "'When it comes to [the victim's] testimony, Jasmine's testimony, and the burden of proof, beyond a reasonable doubt, if you believe [the victim], then the State has reached that burden of beyond a reasonable doubt.'" 2018 WL

5

4264865, at *3. We found this statement was not only erroneous but also prejudicial because the State's case centered on the credibility of the victim and Jasmine. 2018 WL 4264865, at *3.

Here, the prosecutor told the jury in his opening:

"It's pretty simple. It boils down to one thing: You will either believe [Jane], or you won't believe her. At the end of this trial, you will either believe the things she tells you that happened or you won't.

. . . .

". . . You get to decide, 'Do I believe [Jane]?' And that's what this boils down to. You are either going to believe her or you are not.

. . . .

". . . And [Jane] is going to take the stand and tell you what she can remember, and she didn't remember everything. She's going to be open and honest with you. She's going to tell you what happened as best she can tell you, and at the end of the day you are going to believe her or you are not."

And then again in closing, the prosecutor said:

"You, the jury, individually, collectively, and unanimously either believe [Jane] or you don't.

"This case is not complicated. It's serious, yes, but it does not have to be complicated. You don't have to overcomplicate this. You don't have to check your common sense at the door, and in fact your instructions tell you that you can use your common sense and life experience in determining the facts of this case.

"[Jane] says that Robert Evel sexually abused her. Robert says he didn't do those things. So you either believe [Jane] or you believe Robert Evel.

"There's no such thing as 'we believe her, but.' A finding of not guilty is you the jury telling [Jane], you don't believe her."

6

Evel objected at this point in closing, remarking that the prosecutor had mischaracterized what the verdict would be. The district court sustained the objection but did not admonish the jury to disregard it.

And in rebuttal closing, the prosecutor stated:

"You either believe [Jane] or you don't. I would argue there's no reason for you to doubt her. You have every reason to doubt Robert Evel, and you should find him guilty of every crime he is charged with."

Evel equates these "believe" statements to the one made in *Mukes*. But we see a distinct difference—in *Mukes*, the prosecutor directly tied the jury's belief of the victim's testimony to the State's burden of proof, telling the jury this belief was enough to find the defendant guilty—which was untrue. Here, the prosecutor never minimized the reasonable doubt standard. Instead, he accurately framed the case for the jury as one with two conflicting accounts, pointing out the jury had to choose which was believable. Not only was this a true statement, but the prosecutor did not tell the jury that it could convict Evel simply based on whether it believed Jane's testimony, like the prosecutor did in *Mukes*. We see the "believe" statements Evel challenges as a clarification of the question before the jury. We do not find that the prosecutor improperly diluted the State's burden of proof in making them.

Still, we pause to point out the statement that "[a] finding of not guilty is you the jury telling [Jane], you don't believe her" was improper. This characterization of the situation was problematic because of its potential to elicit sympathy for the victim and to personalize the facts of the case and the jury's decision. We find it too pointed and note that Evel's objection was properly sustained. But the district court should have also admonished the jury to disregard the statement. See *State v. Gilley*, 5 Kan. App. 2d 321, 328, 615 P.2d 827 (1980). In any event, Evel does not challenge the remark on appeal,

7

beyond his general claim that the prosecutor's statements diluted the State's burden of proof. So we cannot find the concerns we have with the remark as a basis for error.

## 2. *Was the prosecutor's statement about Jane's credibility in error?*

Evel next claims the prosecutor improperly vouched for Jane's credibility in his opening by saying:

> "And [Jane] is going to take the stand and tell you what she can remember, and she didn't remember everything. She's going to be open and honest with you. She's going to tell you what happened as best she can tell you, and at the end of the day you are going to believe her or you are not."

Evel claims that, in telling the jury Jane would be "honest," the prosecutor was improperly commenting on Jane's credibility. See *State v. Elnicki*, 279 Kan. 47, 64, 105 P.3d 1222 (2005) (prosecutor's closing remark that "'you know [the victim] was telling you the truth'" improperly commented on the credibility of the prosecutor's witness and was thus error).

The State responds by claiming the prosecutor was simply describing the evidence and points out he did not use the problematic phrasing "I think" or "I believe" in his remarks. See *State v. King*, 308 Kan. 16, 33, 417 P.3d 1073 (2018) (analyzing whether prosecutor's "'I think'" and "'I believe'" statements impermissibly conveyed prosecutor's opinion to the jury). It also explains that the opening gives the prosecutor an opportunity to preview the evidence for the jury. Because Jane used the word "honestly" in her testimony several times—such as when she said, "I honestly don't think I would remember," "Honestly, no," and, "I'm pretty sure I did, honestly," among other examples—the State characterizes the prosecutor's remark as simply foretelling the evidence to be presented—"that [Jane] was honest in her answers."

We fail to find the State's distinctions to be meaningful. Although the prosecutor did not say "I think" or "I believe," he still told the jury Jane would be honest—which directly commented on Jane's credibility. A prosecutor can indirectly argue a witness is credible by arguing reasonable inferences based on the evidence: by stating, for example, that the evidence is consistent (or inconsistent) with the witness' version of events or by discussing the witness' motivation to testify in a certain manner. But "the ultimate conclusion as to any witness' veracity rests solely with the jury." *State v. Pabst*, 268 Kan. 501, 507, 996 P.2d 321 (2000).

The prosecutor was not commenting on the evidence—for example, by pointing out how the evidence would support Jane's testimony—but was, instead, expressing his opinion about the veracity of Jane's testimony. This is improper and therefore we find the prosecutor committed error in making this statement.

3. *Were the prosecutor's statements about disregarding events in 2013 in error?*

In Evel's third claim of prosecutorial error, he alleges the prosecutor told the jury that it could disregard exculpatory evidence. This issue requires some context.

Evel admitted evidence at trial that Jane had falsely accused her brother of sexual abuse in 2013, when she was eight years old. During a sleepover, Jane reportedly told a friend's mother that her brother had touched her with his penis as she was sleeping. When questioned by law enforcement about the allegation, Jane denied that her brother ever touched her inappropriately. At trial, the parties introduced reports from forensic interviews of Jane, Jane's mother, and the mother of Jane's friend who reported Jane's allegation to law enforcement. In these interviews, both Jane and her mother denied that Jane was abused by her brother.

In closing, the prosecutor remarked on this evidence by stating:

> "You, the jury, can completely disregard everything about 2013, everything about the joint exhibits, if you so choose. You, the jury, can decide Joints Exhibits 1 through 7 and all the time we spent listening to that was a complete waste of time. I would argue it was a complete waste of time, and I apologize for that complete waste of time."

According to Evel, these remarks were improper because he contends the prosecutor told the jury it could and should ignore exculpatory evidence that was admitted. He points out that in the court's instructions to the jury, it said the jury "'should consider and weigh everything that was admitted into evidence,'" and he characterizes the prosecutor's comments as being at odds with the court's instruction. See PIK Crim. 4th 50.050 (2012).

As the State points out, the prosecutor's comments, within the full context, tell a different story. The State argues the prosecutor was not telling the jury to disregard this jury instruction but was, instead, explaining why the evidence was insignificant and did not impact Jane's credibility.

We agree. When considering the prosecutor's comments before and after these statements, it is obvious the prosecutor was explaining and arguing what factors the jury should consider in assessing witness credibility as it related to the crimes in this case. And when the prosecutor said this evidence wasted time, it could be said the prosecutor was simply making an argument that the evidence there was not relevant to Evel's charges. We do not find these remarks to have been in error because the prosecutor was commenting on the evidence, not obfuscating or contradicting the instructions for the jury.

*Step two: Did the prosecutor's erroneous statement deprive Evel of a fair trial?*

Out of Evel's three claims of prosecutorial error, we find only one statement was made in error. Viewed in isolation, and given the evidence against Evel, we would be disinclined to find this error requires reversal under the second prong of the prosecutorial error analysis.

While the prosecutor erred in saying Jane would testify honestly, the jury was told to make its own credibility assessments. It was also instructed that "[s]tatements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by evidence, they should be disregarded." As the State points out: "Jurors are presumed to follow the instructions they receive in the district court." *State v. Mattox*, 305 Kan. 1015, Syl. ¶ 2, 390 P.3d 514 (2017). The State also makes a valid point that it was unlikely the comment made during opening influenced the jury because days passed between this comment and the jury's deliberations.

That said, we cannot view this error in isolation. As we explain further below, there was another error that affected the fairness of Evel's trial which is related to this prosecutorial error. Both errors distorted the crucial issue of credibility, and we must consider their combined effect on the jury's assessment of the evidence.

*Did the district court err in denying Evel's request to redact evidence under K.S.A. 60-455(d)?*

Evel also challenges the district court's denial of his request to redact inadmissible K.S.A. 60-455 evidence from a trial exhibit. This issue also requires some context.

Normally, evidence that a defendant committed a crime or civil wrong on a specific occasion is inadmissible to prove the defendant's propensity to commit the

11

charged crime. K.S.A. 60-455(a). But when the defendant is accused of certain sexual offenses—like Evel was here—evidence of the defendant's commission of another "act or offense of sexual misconduct" is admissible and may be considered if it is relevant and probative. K.S.A. 60-455(d). K.S.A. 60-455(g) specifies the type of conduct that constitutes an "'act or offense of sexual misconduct,'" which includes conduct proscribed by statutes addressing certain sexual offenses.

If the State wishes to offer evidence under K.S.A. 60-455 at trial, it must disclose that evidence to the defendant within a certain time frame. K.S.A. 60-455(e). Here, the State followed this procedure by filing a motion to admit evidence under K.S.A. 60-455(d). The court scheduled an evidentiary hearing on the State's motion, so the State could proffer the testimony it sought to introduce at trial. Two witnesses testified at the hearing: Evel's daughter and his daughter's friend, whom we call Sally.

Evel's daughter testified that when she and Evel went to the pool, he made sexualized remarks about teenage girls, such as commenting on how they looked in their bathing suits. She said he made similar comments about her. When asked whether Evel ever committed any sexual acts on her, she said, "The only thing I can recall is while I was in high school, he placed his hand on my upper inner thigh, leg, whatever." She said this happened three times, when they were sitting on the couch watching television with Evel's girlfriend. She said Evel's hand was "[j]ust sitting" there on her thigh, which made her uncomfortable, so she moved.

Sally testified next. She described an incident where she was in a truck with Evel and "his behavior changed, and he was trying to touch me on my upper inner thigh. And I remember scooting closer and closer to the door." This was the first time she was ever in Evel's truck. She stated, "He looked at me and smiled and said, 'What are you, a 34C?'" She also said he "groped [her] breasts" when she was 16 years old.

12

At the hearing, the State asked to file a written brief on the admissibility of the K.S.A. 60-455(d) evidence, which the court allowed. When the State filed this brief, it included a section entitled "State's Concession," which stated:

"The State would concede that [Evel's daughter]'s testimony fits primarily under K.S.A. 60-447 and K.S.A. 22-3414(2), as character trait/rebuttal evidence and is therefore almost certainly not admissible in the State's case-in-chief. For these reasons, the State of Kansas will not call [Evel's daughter] as a witness in its case-in-chief. The State will not seek to introduce evidence of the defendant's reputation in its case-in-chief."

And then later in its brief, when describing Evel's daughter's testimony, the State added:

"The second witness, [Evel's daughter], testified in a more general sense about the defendant's reputation and character. While [she] was able to testify about specific incidents and comments made by the defendant to support her opinions and knowledge of the defendant's character and reputation, admittedly she did not testify as to any specific incident that would constitute an 'act or offense' under K.S.A. 60-455(g). Therefore, her testimony would not be admissible under K.S.A. 60-455(d), and instead would more appropriately be admitted, possibly, under K.S.A. 60-447/K.S.A. 22-3414(2), as character rebuttal evidence. Admittedly, the defendant would need to 'open the door' for this evidence to be admissible."

In this brief, the only K.S.A. 60-455 evidence the State asked to present at trial was Sally's testimony about Evel's two incidents of sexual misconduct towards her.

The district court ultimately granted the State's motion regarding the admission of Sally's testimony, but it barred the State from introducing character evidence about Evel unless the court found Evel "opened the door" for such evidence to be admissible.

On the second day of trial, before Sally testified and before the jury was brought in, Evel asked the court to redact a portion of one of the State's proposed exhibits. The exhibit was a handwritten statement from Sally to law enforcement describing the incidents between her and Evel. After describing the incidents, Sally then said, "'Ever since then, he would always rub my leg in a sexual way, same with [his daughter]. He would touch, look, and make comments about us both sexually. He would always talk about how good we both looked and would talk about our butts.'" Evel argued the statement's mention of his daughter should be redacted based on the court's ruling on the K.S.A. 60-455 evidence, which included ruling that his daughter could not testify during the State's case-in-chief nor could any situation with her be mentioned or talked about unless Evel opened the door to such evidence. In response, the State admitted the court ruled that the character or reputation evidence from Evel's daughter was inadmissible, but it argued the portion of the statement Evel sought to redact included things Sally observed or overheard so it was not inadmissible hearsay.

The district court declined to redact the statement. But in its ruling, the court focused on the State's hearsay comments, remarking that Sally's statement did not need to be redacted because it was Sally's observation and not something Evel's daughter told Sally. The court did not mention Evel's objection based on K.S.A. 60-455 or the court's prior ruling on the admission of this evidence.

When it came time for Sally to testify, Evel renewed his pretrial K.S.A. 60-455(d) objection, which the court overruled. Evel appeals the district court's admission of Sally's unredacted statement because the portion he sought to redact was inadmissible under K.S.A. 60-455(d).

*Preservation*

K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record. *State v. Showalter*, 318 Kan. 338, 345, 543 P.3d 508 (2024). In *State v. Scheetz*, 318 Kan. 48, 59, 541 P.3d 79 (2024), our Supreme Court interpreted this statute to "mean a party cannot object to evidence on one ground at trial and then substitute another ground on appeal or assert a general ground at trial and then specify more particular grounds on appeal."

The State argues that Evel did not preserve his objection to the admission of this evidence based on K.S.A. 60-455(d). It contends that Evel did not argue to the district court that the portion of the statement he sought to redact was inadmissible under K.S.A. 60-455(d) because the conduct did not violate any sexual offense statute. But, under the circumstances, we find the State's position both disingenuous and unavailing.

First, the State fails to acknowledge that, before trial, it specifically conceded the incidents described in the portion of Sally's statement that Evel sought to redact were inadmissible under K.S.A. 60-455(d) because they did not constitute an act or offense of sexual misconduct. And the State represented that it would not seek to introduce this evidence—which it called character rebuttal evidence under K.S.A. 60-447—unless Evel opened the door to its admission. Given these concessions, it seems unfair for the State to fault Evel for failing to more specifically describe a basis for an objection the parties had already agreed was valid. Evel protested that the incidents involving his daughter were not to be mentioned—and the State had agreed not to reference these incidents because it agreed they were inadmissible under K.S.A. 60-455(d).

Next, the State underestimates the objections Evel made at trial. When Evel asked for the statement to be redacted, he based his objection on K.S.A. 60-455(d) and the fact that any situation with his daughter was not to be mentioned or talked about. And when

15

the State sought to introduce the evidence during Sally's testimony, Evel renewed his pretrial K.S.A. 60-455(d) objection. Given this, the record shows Evel based his objection on the admissibility of the incidents with his daughter under K.S.A. 60-455(d).

This is not a situation like *Scheetz*, where the defendant provided different grounds for his objection before the district court than what he relied on in his appeal. 318 Kan. at 60-61. The issue of whether the incidents Evel's daughter discussed at the pretrial hearing—the very ones Sally mentioned in her statement involving Evel touching his daughter and commenting about her body—constituted an act or offense of sexual misconduct was addressed before the district court. The State conceded this evidence was inadmissible under K.S.A. 60-455(d) and, based on this concession, the district court ordered such character evidence was inadmissible unless Evel opened the door to its admissibility. Evel based his objection on this concession and order and specifically mentioned K.S.A. 60-455(d) in his objection. Under these circumstances, we find his objection that the incidents with his daughter were inadmissible under K.S.A. 60-455(d) is preserved.

That said, we pause to provide a practice pointer. When responding to Evel's objection to the admission of this evidence at trial, the State dodged both its concession and the basis of Evel's objection. Instead, it argued the evidence was not inadmissible hearsay since Sally observed or overheard Evel's behavior and comments towards his daughter. In other words, the State did not respond to the basis of Evel's objection but instead addressed a basis he did not raise. And the district court similarly failed to address the basis for Evel's objection—instead ruling the portion of Sally's statement which Evel sought to redact was admissible because it was not hearsay. While Evel consistently mentioned K.S.A. 60-455(d) as the basis for his objection both times he raised the objection at trial, the record does not contain the district court's reasoning for why it believed the evidence was admissible under K.S.A. 60-455(d). In this situation, Evel should have redirected the district court—when it ruled the evidence was not hearsay—

and requested a ruling on the basis for his objection that he actually raised (which was that the evidence was inadmissible under K.S.A. 60-455[d]) to provide a more complete record for appeal.

*The court erred in failing to redact the portion of Sally's statement at issue and prejudiced Evel's right to a fair trial.*

While the admission of evidence under K.S.A. 60-455(d) normally involves consideration of several factors, only one is at issue here—whether the conduct described in Sally's statement meets the definition of an "act or offense of sexual misconduct" in K.S.A. 60-455(g) and was thus admissible under K.S.A. 60-455(d). This issue presents a question of statutory interpretation which we review de novo. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

As mentioned, before trial the State conceded the conduct which Evel sought to redact from Sally's statement was not admissible under K.S.A. 60-455(d) and instead constituted rebuttable character evidence under K.S.A. 60-447. We see no error in this assessment of the evidence. And after conceding it would not allow Evel's daughter to testify about such conduct, the State cannot then use a backdoor to gain the admittance of this testimony through Sally. The State is bound by its concession, and thus the district court erred in admitting this testimony over Evel's K.S.A. 60-455(d) objection.

But the determination that the district court erred in admitting this evidence does not automatically entitle Evel to a new trial. We must also determine whether the error was harmless. Under this standard, the State must prove there is no reasonable probability that the error contributed to the outcome of the trial. *State v. Longstaff*, 296 Kan. 884, 895, 299 P.3d 268 (2013).

17

The State offers two arguments to satisfy this burden. First, it points out that the jury was instructed not to retaliate against Evel for a prior bad act when it was given this instruction:

> "You may consider this evidence regarding the crimes charged as evidence of the defendant's propensity to commit sexual misconduct and as evidence of the defendant's motive. You may give this evidence the weight, if any, you believe it should receive. You may not convict defendant of the crimes charges simply because you believe he committed another unlawful act."

The State asserts that we can presume the jury followed this instruction.

Next, the State claims the error in admitting evidence about Evel's daughter was harmless because it was redundant to properly admitted evidence. It relies on *State v. Raskie*, 293 Kan. 906, 269 P.3d 1268 (2012), to support this proposition. In *Raskie*, the defendant was convicted of two counts of aggravated indecent liberties with a child. On appeal, the defendant challenged the admission of certain "'grooming' items" (a vibrator, four risqué photographs of unidentified women, and a black corset) as exhibits at trial. Our Supreme Court assumed the district court erred in admitting these items because the defendant had objected to their admission. But it found that any assumed error was harmless because the defendant did not object to the admission of photographs of these items nor did he object to the admission of similar items (two other vibrators, a purple corset, and three pairs of thong panties). As a result, the court found any error in admitting the items was harmless since similar (and somewhat cumulative) evidence was also admitted. 293 Kan. at 913.

In isolation, the State's arguments are persuasive. Since we normally presume a jury follows the instructions it is given, it is reasonable to assume the jury considered the K.S.A. 60-455(d) evidence in the proper context. See *City of Mission Hills v. Sexton*, 284 Kan. 414, 438, 160 P.3d 812 (2007). And not only was Evel's conduct towards his

18

daughter similar to his conduct towards Sally, his conduct towards Sally was more aggressive and overtly sexual. It is a close call.

Even so, K.S.A. 60-455 evidence has a powerful impact on a jury—both in its tendency to prove a defendant's guilt and in its potential to unduly influence a jury's factfinding process. As we explained in *State v. Boggs*, 287 Kan. 298, Syl. ¶ 2, 197 P.3d 441 (2008):

> "At least three types of prejudice can follow from the improper admission of evidence of other crimes or civil wrongs. First, a jury might well exaggerate the value of other wrongful acts as evidence proving that because the defendant has committed a similar wrongful act before, it might properly be inferred that he or she committed this one. Second, the jury might conclude that the defendant deserves punishment because he or she is a general wrongdoer even if the prosecution has not established guilt beyond a reasonable doubt in the prosecution at hand. Third, the jury might conclude that because the defendant is a criminal, the evidence put in on his or her behalf should not be believed."

The State's only purpose in offering this evidence was to show Evel's propensity to commit the crimes Jane accused him of. Therefore, the prejudice created by this evidence is exactly the kind our Supreme Court expressed concern about in *Boggs*. Since it had no tendency to prove any disputed material fact, we cannot find its admission was harmless. See *State v. Cook*, 45 Kan. App. 2d 468, 474, 249 P.3d 454 (2011) (finding improper admission of prior marijuana conviction unfairly prejudiced defendant's trial for possession of marijuana). Under these circumstances we cannot say there is no reasonable probability that the error in admitting this evidence contributed to the outcome of the trial. *Longstaff*, 296 Kan. at 895. We therefore find Evel is entitled to a new trial based on the improper admission of this evidence.

*When accumulated, we find the errors deprived Evel of a fair trial.*

Evel also contends the cumulative effect of errors by the prosecutor and district court impacted his right to a fair trial. Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. In assessing the cumulative effect of errors during the trial, appellate courts examine the errors in context and consider how the trial judge dealt with the errors as they arose; the nature and number of errors and whether they are interrelated; and the overall strength of the evidence. If any of the errors being aggregated are constitutional, the cumulative effect must be harmless beyond a reasonable doubt. *State v. Guebara*, 318 Kan. 458, 483, 544 P.3d 794 (2024).

Evel correctly points out that the prosecutor repeatedly emphasized the importance of witness credibility at trial, framing the decision for the jury as being whether it believed Jane or Evel. He argues the prosecutor improperly bolstered Jane's credibility by vouching for her honesty in its opening and improperly damaged Evel's through the admission of evidence about his conduct towards his daughter. And he points out that the evidence involving his daughter was particularly prejudicial since it implicated a familial relationship, which was much more inflammatory than Sally's accusations. These errors are interrelated and affected the main issue in the case—whose version of events the jury should believe.

Unfortunately, the State does not address any potential impact of the accumulation of any alleged prosecutorial errors and the error in the admission of the K.S.A. 60-455 evidence. Instead, it simply repeats its claim that these allegations of error are unfounded. It says there were "not at least two errors to accumulate," but then adds "[i]f the Court disagrees, then the errors did not substantially prejudice Evel and deny him a fair trial." But such a conclusory statement cannot satisfy the State's burden.

We were faced with a similar accumulation of errors in *Cook*, 45 Kan. App. 2d at 478-79. There, we found that the admission of Cook's prior marijuana conviction was improper under K.S.A. 60-455 and that the prosecutor erred in closing argument by making comments which improperly impugned Cook's credibility. We found these errors accumulated in a way that prejudiced the fairness of Cook's trial. The situation in *Cook* was a credibility battle, too—between a police officer and Cook. As in *Cook*, we find the combination of errors here unfairly tilted the "credibility playing field," thus requiring a new trial. 45 Kan. App. 2d at 478-79.

*Because we find Evel is entitled to a new trial, we must consider his sufficiency of the evidence claims but not his challenge to the district court's denial of his motion for a trial continuance.*

Evel also claims his right to a fair trial was prejudiced when the district court denied his motion to continue the trial based on the State's late disclosure of material exculpatory evidence. Since we are remanding the case for a new trial, we need not consider this issue on appeal.

Evel's challenges to the sufficiency of the evidence supporting his convictions for attempted rape and criminal threat present another story. If the evidence was insufficient to support these convictions at the first trial, then a second trial on the same charges would violate Evel's right to be free from double jeopardy under the Fifth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. A reversal based on trial errors does not implicate the defendant's guilt or innocence but is simply a determination that the process through which the defendant was convicted was fundamentally defective. But a reversal based on evidentiary deficiencies means the State failed to prove its case. See *Lockhart v. Nelson*, 488 U.S. 33, 40, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988).

21

*Standard of Review and Relevant Legal Framework*

When a defendant challenges the sufficiency of the evidence, Kansas appellate courts review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024). In fact, our Supreme Court has stated: "It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed." *State v. Zeiner*, 316 Kan. 346, 350, 515 P.3d 736 (2022).

Notably, even though we have determined evidence of Evel's conduct towards his daughter was erroneously admitted, we must nonetheless consider this evidence when determining the sufficiency of the evidence to support Evel's convictions, to the extent that it is relevant to Evel's challenges. The United States Supreme Court explained the purpose behind this rule in *Lockhart*:

> "[A] reversal for insufficiency of the evidence should be treated no differently than a trial court's granting a judgment of acquittal at the close of all the evidence. A trial court in passing on such a motion considers all of the evidence it has admitted, and to make the analogy complete it must be this same quantum of evidence which is considered by the reviewing court." 488 U.S. at 41-42.

1. *The trial evidence was sufficient to support Evel's attempted rape conviction.*

Evel first challenges his attempted rape conviction. He asserts that to convict him of attempted rape, the jury needed to find that he tried and failed to penetrate Jane's vagina. Because Jane testified that she felt pain when Evel tried to penetrate her, Evel contends this testimony supports an inference of some penetration. Since evidence of any vaginal penetration—however slight—would support a finding of rape, Evel contends the

evidence at trial supported a finding that he completed—rather than failed to complete—the crime of rape. The State, on the other hand, points out that Jane repeatedly testified that she did not know if Evel penetrated her, which is sufficient to support a conviction for attempted rape.

The elements of attempted rape of a child under the age of 14 have been defined as requiring proof that the defendant:

"(1) performed an overt act toward penetrating the sexual organ of a female child under the age of 14; (2) performed that act with the intent to penetrate the sexual organ of a female child under the age of 14; and (3) failed to penetrate the sexual organ of a female child under the age of 14." *State v. Peterman*, 280 Kan. 56, 60, 118 P.3d 1267 (2005).

At trial, Jane testified Evel tried to penetrate her with his penis. She said she remembered feeling pain when he tried, but she did not know if his efforts were successful.

We confronted a similar argument to the one Evel makes here in *State v. Stenberg*, No. 116,026, 2017 WL 4455307 (Kan. App. 2017) (unpublished opinion). There, the defendant argued the district court erred in failing to give a lesser included instruction on attempted rape in addition to the rape instruction. The defendant argued there was evidence at trial that could have supported the conclusion that he did not penetrate the victim's sex organ, so the jury could have found he committed attempted rape instead of rape. The four-year-old victim provided inconsistent testimony on whether Stenberg penetrated her, but a law enforcement agent who interviewed the victim testified the victim's demonstration of intercourse positions with anatomically correct dolls led the agent to conclude penetration had occurred. We concluded that, based on the record as a whole, the evidence provided a factual basis for the lesser offense instruction of attempted rape. That is, there was some evidence from the victim that Stenberg did not

penetrate her, which was sufficient to support a conviction for attempted rape. 2017 WL 4455307, at *11-12.

On the flip side, in *State v. Bloom*, No. 97,883, 2009 WL 743049 (Kan. App. 2009) (unpublished opinion), we found the district court did not err when denying the defendant's request for a lesser included attempted rape instruction because no evidence was presented at trial that the defendant attempted but failed to complete the crime of rape. We noted the evidence consistently demonstrated that the defendant had committed acts sufficient to establish the penetration element of rape. Without evidence that the defendant had not penetrated the victim, the jury could not reasonably convict the defendant of an attempted rape charge. 2009 WL 743049, at *5.

This case is more like *Stenberg* than *Bloom*. Evel admits Jane testified that she had no idea whether Evel penetrated her vagina. But she did testify that he tried. Based on this testimony, a rational factfinder could have found Evel guilty beyond a reasonable doubt of attempted rape.

2. *The trial evidence was sufficient to support Evel's criminal threat conviction*

Evel also challenges his criminal threat conviction, arguing the trial evidence does not support beyond a reasonable doubt that he ever threatened Jane with violence. Under K.S.A. 21-5415(a)(1), criminal threat is defined as:

> "any threat to:
>
> "(1) Commit violence communicated with intent to place another in fear, or to cause the evacuation, lock down or disruption in regular, ongoing activities of any building, place of assembly or facility of transportation, or in reckless disregard of the risk of causing such fear or evacuation, lock down or disruption in regular, ongoing activities."

And K.S.A. 21-5111(ff) defines "'[t]hreat'" as "a communicated intent to inflict physical or other harm on any person or on property."

The State responds by pointing out that it presented such evidence. While Jane testified that Evel said if she told anyone what happened, her brother would lose his medical insurance (which, admittedly, is not a threat of violence), she also said Evel threatened to hurt her or her family if she told anyone. And she said Evel's remarks scared her enough that she told no one what happened.

Evel submits that Jane's statements do not support a finding that Evel threatened her or her family with "physical harm." Rather, he characterizes the statements as "threats to do bad things" but not "threats of violence." Yet Evel provides no legal authority that would require such precisely worded threats, nor have we located any. In fact, "[t]he general rule is that a threat otherwise coming within the purview of a statute need not, unless the statute expressly so requires, be in any particular form or in any particular words, and it may be made by innuendo or suggestion, and need not be made directly to the intended victim." *State v. Knight*, 219 Kan. 863, 866, 549 P.2d 1397 (1976) (citing 86 C.J.S. Threats & Unlawful Communications § 3b, p. 788; and 31 Am. Jur. 2d, Extortion, Blackmail, Etc., § 10, p. 907).

"'All circumstances surrounding the communication, including the relationship between the parties, must be considered in determining whether the communication in issue is a [criminal] threat.'" *State v. Bursack*, No. 97,161, 2008 WL 2891056, at *2 (Kan. App. 2008) (unpublished opinion). In *Bursack*, the defendant argued his statement that he would make the victim "'pay, pay, pay'" was not a threat, much less a threat to commit violence. But we found the statement, considered in context, was sufficient to support his criminal threat conviction. 2008 WL 2891056, at *3. Similarly, we find Jane's statements—particularly given the context and her reaction—provided sufficient evidence to support Evel's conviction for criminal threat.

CONCLUSION

It is never an easy decision to grant a new trial, especially after someone has been convicted of such serious offenses. But, regardless of the severity of the crime, it is a fundamental principle of American law that all accused must receive a fair trial. We are mindful of the emotional strain, financial burden, and significant time investment that all parties have contributed to this case—and which they will be called upon to contribute again. But such expenditures are sometimes required in the cause of justice. Although these sacrifices must often be borne individually, their benefit is felt by all.

Reversed and remanded with directions.